Thomas E. REGISTER and Evelyn M. Register, Appellants,

v.

FORD MOTOR CREDIT COMPANY, Appellee.

No. 01–87–00048–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 31, 1987.

Rehearing Denied Feb. 4, 1988.

James A. Gieseke and Karl C. Hoppess, Hoppess, Cowgill & Emmott, Houston, for appellants.

Ingrid J. Blackwelder, Baker & Botts, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUGGAN, JJ.

EVANS, Chief Justice.

The appellants, Thomas E. Register, and wife Evelyn M. Register, seek reversal of a deficiency judgment in favor of the appellee, Ford Motor Credit Company, holding the Registers liable as guarantors of a promissory note. The principal questions on appeal relate to the applicability of the federal Ship Mortgage Act of 1920, 46 U.S. C. sec. 911 et seq. (1975). We conclude that the provisions of the Act govern the disposition of these issues, and we affirm the trial court's judgment.

Arrow Marine No. One, Inc. executed a promissory note dated January 6, 1979, in the amount of $700,000, payable to Ford Motor Credit Company. Arrow Marine used the loaned funds to purchase a seagoing vessel, the Elk Arrow. To secure payment of its note, Arrow Marine, acting pursuant to the provisions of the Ship Mortgage Act, executed a first preferred ship mortgage covering the vessel.

The appellant, Thomas E. Register, Secretary of Arrow Marine, and Conrad Horst, its President, each owned 50% of the company's corporate stock. Together with their wives, Register and Horst unconditionally guaranteed payment of the Ford Motor Credit Company note.

In December 1983, Arrow Marine defaulted on the note, and in September 1984, it filed for reorganization in the U.S. Bankruptcy Court. Because of the automatic stay imposed by the reorganization proceedings, Ford Motor Credit Company was prohibited from taking any action, without court order, to recover on the note or to take possession of the vessel. In December 1984, Ford Motor Credit Company initiated this action against the Registers, seeking to recover on their guaranty agreement. Ford Motor Credit Company alleged that Arrow Marine was not made a party because of the bankruptcy proceedings, and that the amount of the unpaid principal due on the note was in the sum of $517,038.57. Ford Motor Credit Company further alleged that as of December 1, 1984, the interest due and owing on said debt totaled $201,811.51. The Registers' answer asserted, among other things, that they had received no consideration for the signing of the guaranty agreement.

In April 1985, Ford Motor Credit Company filed a motion for relief from the stay in the reorganization proceeding, and on July 23, 1985, after a hearing and on agreement of the parties, the bankruptcy judge authorized Ford Motor Credit Company to pursue its rights against the Elk Arrow, including the initiation of admiralty proceedings to foreclose its first preferred ship mortgage. On August 1, 1985, Ford Motor Credit Company initiated an admiralty action under the Ship Mortgage Act, asking that the Elk Arrow be seized and sold at public sale. On August 20, 1985, the U.S. District Court ordered the U.S. Marshal to seize the vessel, and the marshal took possession of the vessel on September 4, 1985. Pursuant to the Ship Mortgage Act, the marshal posted large printed notices in two conspicuous places on the Elk Arrow, giving notification of its seizure. The U.S. Marshal also gave notice of the seizure to Conrad Horst, the President of Arrow Marine.

After the vessel was seized, Ford Motor Credit Company filed a motion in the admiralty action, asking that the court designate the procedure for giving notice of the seizure. A copy of that motion was sent to the attorney of record for Arrow Marine, who was a member of the same firm representing the Registers in this action. As requested by said motion, the U.S. District Court ordered the publication of notice of the seizure, directing that any claimants having an interest in the vessel file their claims with the court. Pursuant to that order, the U.S. Marshal published a notice of the seizure in the Houston Chronicle. On November 8, 1985, Ford Motor Credit Company filed a motion for an interlocutory order directing the sale of the vessel, and on December 18, 1985, the U.S. District Court entered an order that the property be sold by the marshal at public sale to the highest bidder after publication and notice of sale. Pursuant to this order, a notice of the scheduled sale was published on three consecutive dates in the Houston Post. At the scheduled time, place, and date, the U.S. Marshal conducted a public sale, receiving 41 competitive bids. The highest bid was that of Ford Motor Credit Company in the amount of $21,500. Arrow Marine, Horst, and the Registers neither attended the sale nor filed any contest to the sale. On February 14, 1986, the U.S. District Judge reviewed the proceedings, and after finding that the notice of the sale had been properly given and that the sale had been properly conducted, he entered an order confirming the sale to Ford Motor Credit Company. On April 28, 1986, Ford Motor Credit Company sold the vessel to a third party for $100,000.

In June 1986, Ford Motor Credit Company filed a motion for summary judgment in this action, and on September 9, 1986, the court granted an interlocutory partial summary judgment. In its order, the court determined that the Registers were jointly and severally liable to Ford Motor Credit Company for the principal amount of $618,372.95, plus accrued interest in the amount of $223,082.31, "less a reasonable amount representing proceeds from resale, such amount to be determined at trial...." The order further provided that Ford Motor Credit Company would be entitled to future interest at the rate provided in the note,

plus attorney's fees, expenses, and court costs.

The cause later proceeded to trial before the court, without a jury, and the court's final judgment dated November 2, 1986, awarded Ford Motor Credit Company the total sum of $741,455.26, as the "principal amount plus accrued interest due after deducting the amount representing proceeds from resale of the collateral," plus interest and attorney's fees. In separate findings of fact, the court found that as of April 29, 1986, the principal amount due plus accrued interest was $841,455.26; and that the sale of the Elk Arrow had been properly conducted, pursuant to proper notice of foreclosure and sale, and "was commercially reasonable in all respects." The court further found that the reasonable value of the vessel at the time of the sale was $100,000, and that the resale of the vessel for that amount "was commercially reasonable in all respects." The court concluded that after allowing the amount of $100,000 as an offset, the Registers were liable to Ford Motor Credit Company in the amount of $741,455.26, plus interest.

■ Under their first point of error, the Registers complain that the trial court's interlocutory summary judgment order was erroneous, because appellant had raised factual issues regarding the commercial reasonableness of the sale of the vessel, the lack of notice of the sale to the Registers, and the fair market value of the vessel.

We overrule this complaint. The interlocutory summary judgment order expressly reserved for trial the issue of the commercial reasonableness of the sale, and within that issue are the Registers' claims regarding lack of notice and the amount that should be deducted as an offset On oral submission of the appeal, the Registers concede that the interlocutory summary judgment order did not preclude their presentation of evidence on these issues at the trial on the merits. Indeed, the issue was presented and was decided by the trial court.

■ The Registers next contend, under their first point of error, that the summary judgment proof was insufficient to establish the amount of their liability, as a matter of law, because of inconsistencies in the summary judgment motion and the affidavits thereto, as to the amount of the deficiency due.

We also overrule this contention. In its motion for summary judgment, Ford Motor Credit Company asserts that an uncontroverted fact is the Registers' liability for the principal amount of $517,038.57, and in support of this assertion, it makes reference to the Registers' admission on file in the case. The motion also refers to an attached affidavit of W.G. Lehman, Equipment Remarketing Specialist for Ford Motor Credit Company, who states that as of the date of the sale of the collateral, the sum of $618,-372.95 in principal and the sum of $223,-082.31 in accrued interest were due and owing to Ford Motor Credit Company on the promissory note. The Registers did not controvert the sworn affidavit testimony, and the trial court properly concluded, as a matter of law, that the amount due on the note was the amount stated in the affidavit.

The first point of error is overruled.

■ In the Registers' second point of error, they contend that the evidence is legally and factually insufficient to support the trial court's finding that notice was duly and properly given regarding the disposition of the collateral. In reviewing this point of error, we apply the same standard of review as would be applicable to a review of a jury's finding on a special issue. *Okon v. Levy*, 612 S.W.2d 938, 940 (Tex. Civ.App.—Dallas 1981, writ ref'd n.r.e.).

The Registers contend that applicable notice requirements for guarantors, as "debtors," are set forth in Tex.Bus. & Com.Code Ann. sec. 9.504 (Vernon Supp.1987); *see Peck v. Mack Trucks, Inc.*, 704 S.W.2d 583, 585 (Tex.App.—Austin 1986, no writ). The Registers contend that because they were not given notice pursuant to section 9.504, Ford Motor Credit Company was not entitled to a deficiency judgment against them. *See Tanenbaum v. Economic Laboratory*, 628 S.W.2d 769 (Tex.1982).

The Registers do not argue that the notice requirements of the Ship Mortgage Act and of the U.S. District Court's order were not followed. The Registers argue only that the Ship Mortgage Act does not govern the rights of guarantors of loans on vessels, citing *Reedsburg Bank v. Apollo,* 508 F.2d 995, 1000 (7th Cir.1975).

We conclude that the seizure and sale of the vessel was conducted within the exclusive jurisdiction of the admiralty court, and that the notice provisions of section 9.504 do not apply. Indeed, section 9 of the statute expressly provides that its provisions do not apply to a "security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that such statute governs the rights of parties to, and third parties affected by transactions in particular types of property." Tex.Bus. & Com.Code Ann. sec. 9.104 (Vernon Supp.1987). The Official Comment to section 9.104 explains:

> Where a federal statute regulates the incidents of security interests in particular types of property, those security interests are of course governed by federal statute and excluded from this Article. The Ship Mortgage Act, 1920, is an example of such a federal act.

Here, the sale was properly conducted and notice given in accordance with the orders of the U.S. District Court in the admiralty action instituted under the Ship Mortgage Act of 1920. We hold that no additional notice was required. *See J. Ray McDermott & Co. v. Vessel Morning Star,* 457 F.2d 815, 818 (5th Cir.), *cert. denied,* 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1972) (holding that the Ship Mortgage Act provides comprehensive procedure for foreclosure and sale of a vessel subject to preferred ship mortgage, including claim for deficiency judgment in personam).

The second point of error is overruled.

■ In their third point of error, the Registers contend that the evidence is legally and factually insufficient to support the offset of only $100,000, and that they were entitled to a credit for the "full fair market value" of the vessel. In support of this contention, the appellants cite *Walter*

*E. Heller & Co. v. O/S Sonny V.,* 595 F.2d 968, 971 (5th Cir.1979).

In *Heller,* a creditor, who was the high bidder at a forced sale under the Ship Mortgage Act, purchased the ship for $35,000. The creditor then resold the ship for $52,-000. The district court, after confirming the sale, allowed the debtor credit for only $35,000, the amount of the creditor's bid at the foreclosure sale. On appeal, the 5th Circuit Court of Appeals held that the U.S. District Court had abused its discretion "in not permitting the defendants to pursue an offset measured by the fair value of the vessel, as opposed to the foreclosure sale price." The Court of Appeals accordingly reversed and remanded the case for trial of that issue, suggesting that "the amount of the resale price, $52,000, less the cost of any repairs, could be the upper limit of the offset." *Walter E. Heller,* 595 F.2d at 972.

In the instant case, Ford Motor Credit Company offered the testimony of an expert witness, Chris Labure, a professional marine surveyor, who estimated the market value of the Elk Arrow, at a forced sale, to be the amount of $100,000. Mr. Labure further testified that the fair market value of the vessel in a "willing buyer-willing seller" situation was $200,000. We conclude that the trial court acted well within its discretion in allowing the Registers an offset for the amount of $100,000, the uncontroverted market value of the vessel at the sale. *Walter E. Heller,* 595 F.2d at 972. We note that the Registers did not present any evidence in the trial court in support of a higher value, and in their closing argument, they contended only that Ford Motor Credit Company had not met its burden of proving any reasonable market value of the vessel.

The third point of error is overruled.

■ In their fourth point of error, the Registers challenge the legal and factual sufficiency of the evidence to support the trial court's findings that Ford Motor Credit Company disposed of the collateral in a commercially reasonable manner. Under this point, the Registers claim that the nature of the advertising, the place of ad-

vertising, the length of time between the seizure and the sale, and the relatively small bid obtained at the sale, all point to the unreasonable manner in which the sale was conducted.

The sales price paid by Ford Motor Credit Company is irrelevant because the Registers were credited for the full resale price of $100,000, rather than the auction sale price of $21,500.

Everything relating to the sale, including the advertising of the sale and the time between the seizure and the sale, was under the exclusive control of the U.S. District Court, acting pursuant to the provisions of the Ship Mortgage Act. The U.S. District Court's determination that the sale, including the notice and advertising for the sale, was conducted in a proper manner and pursuant to the statute, if not conclusive, supports the trial court's finding that the sale was conducted in a reasonable manner.

The fourth point of error is overruled.

■ In their fifth point of error, the Registers contend that the trial court erred in denying their motion for new trial, because the trial judge, a visiting judge, expressed difficulty in hearing the testimony and did not review all of the documentary evidence.

The record does not support the Registers' complaint under this point of error. Some of the trial judge's comments indicate that the judge (and the court reporter) occasionally had trouble understanding some of the words used by the witnesses and counsel. Whether this was due to some hearing problem, or to the failure of the witnesses and counsel to articulate, is not entirely clear from the record. In any event, the Registers voiced no objection at trial about the court's comments or about the court's alleged failure to consider all of the evidence presented. Thus, the Registers did not preserve these complaints for review on appeal. *See Gillum v. Temple*, 546 S.W.2d 361, 365 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

The fifth point of error is overruled.

■ In their sixth point of error, the Registers contend that the trial court erred in denying their demand for a jury trial. The Registers admit that the demand was not timely presented. But they argue that they expected the regular trial judge to conduct the trial, and that they made their demand as soon as they found out that a visiting judge would hear the case. The Registers further argue that a jury was available in the hall on the day of trial and that they were entitled to have that jury hear their case.

The Registers' demand for jury trial was made nearly two years after the suit was filed, and after the case was set on the court's non-jury docket. Furthermore, the jury "in the hall" was not present for that case, but had been assigned to another case.

After a case is set for trial on the non-jury docket, it is a matter within the trial court's discretion to decide whether or not to remove the case from that docket and order a trial by jury. *Olson v. Texas Commerce Bank*, 715 S.W.2d 764, 767 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). The Registers have failed to demonstrate that the trial court abused its discretion.

The sixth point of error is overruled.

The judgment of the trial court is affirmed.